IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CLARA WILLIAMS, FRANCINE GLADNEY, and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | FILE NO. |
| GRADY MEMORIAL HOSPITAL CORPORATION, d/b/a GRADY HEALTH SYSTEM, | ) ) ) ) ) ) | |
| Defendant. | ) ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Clara Williams and Francine Gladney bring this suit—demanding trial by jury—under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., on behalf of themselves and others similarly situated to recover unpaid overtime compensation, liquidated damages, and their attorneys' fees and costs from Defendant Grady Memorial Hospital Corporation, d/b/a Grady Health System, alleging as follows:

## OVERVIEW

1. Defendant Grady Memorial Hospital Corporation, d/b/a Grady Health System ("Grady"), a nonprofit corporation in receipt of state and federal funds, has failed to pay the named Plaintiffs and others federally mandated overtime in violation of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, et seq.

## JURISDICTION AND VENUE

2. The claims herein present federal questions, and jurisdiction of this Court is predicated under 28 U.S.C. § 1331 and the FLSA, 29 U.S.C. § 216(b).

3. Venue is proper pursuant to 28 U.S.C. § 1391. The cause of action arose in Fulton County in the Northern District of Georgia.

## PARTIES

4. Plaintiff Clara Williams ("Plaintiff Williams" or "Ms. Williams") is a resident and citizen of the State of Georgia and resides in Mableton, Georgia 30126. Ms. Williams has been a technology-support employee of Grady since November 2000 and is entitled to the protections of FLSA under 29 U.S.C. § 203(e). For purposes of this action, Plaintiff Williams subjects herself to the jurisdiction and venue of this court.

5.     Plaintiff Francine Gladney ("Plaintiff Gladney" or "Ms. Gladney") is a resident and citizen of the State of Georgia and resides in Conyers, Georgia 30012. Ms. Gladney has been a technology-support employee of Grady since September 2010 and is entitled to the protections of FLSA under 29 U.S.C. § 203(e). For purposes of this action, Plaintiff Gladney subjects herself to the jurisdiction and venue of this court.

6.     Grady is a domestic, non-profit Georgia corporation, with its principal place of business located at 80 Jesse Hill Jr. Drive Southeast, Atlanta, Georgia 30303. Process may be served upon its registered agent, Timothy Jefferson, at the stated address. Grady is the corporate governing body of Grady Health System. Throughout Plaintiffs' employment Grady has been at all times an employer engaged in commerce and therefore subject to FLSA under 29 U.S.C. §§ 203(b), (d). This court has personal jurisdiction over Grady.

7.     Grady has violated the provisions of §§ 7 and 15(a)(2) of the FLSA [29 U.S.C. §§ 207 and 215(a)(2)] by employing employees engaged in commerce for work weeks longer than 40 hours without compensating them for their employment in excess of 40 hours at rates not less than 1½ times the regular rates at which they were employed.

8.	Grady's violations of the FLSA were willful and without justification or excuse under 29 U.S.C. § 201, et seq.  Based on these willful violations, Plaintiffs and the similarly situated employees who opt-in to this collection action seek three years of unpaid compensation as well as liquidated damages and their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

### Plaintiff Williams Is Entitled to Overtime Compensation

9.	Plaintiff Williams is currently employed by Grady. Her title is Junior Application Coordinator.

10.	Ms. Williams has been working for Grady for 11 years. Grady initially hired her in November 2000 as a Help Desk Support employee, an hourly employee with a 40-hour workweek from Monday through Friday.

11.	In that role, Grady compensated Ms. Williams at a rate of approximately $17 per hour. Grady paid her overtime at approximately $25.50 per hour.

12.	In 2006, Grady moved Ms. Williams to the role of Application Analyst. Grady compensated her at the rate of approximately $24 per hour. She was paid overtime at time and a half for hours in excess of 40 hours per week in

the office. Ms. Williams was also compensated for time during which she was out of the office but "on call."

13. As Application Analyst, Grady required Ms. Williams to be "on call" 24 hours a day, 7 days a week, to give technology support to Grady employees working at the hospital. During her on-call hours, Grady required Ms. Williams to keep on her a cellular on-call phone that employees experiencing technology difficulties, or "end-users," could contact. If Ms. Williams needed to address a problem with an end-user, she would have to remotely access the Grady network via her home Internet connection on her Grady-issued laptop or her home computer. Calls came to Ms. Williams at all times of the day and night.

14. Grady compensated Ms. Williams for "call time" at a rate of $4 per hour. Her on-call hours ran from the time that she finished work at her office through the next morning when she returned to the office. For example, for the days that she worked at her office from 8:00 am to 4:30 pm, her on-call time began at 4:30 pm and ended at 8:00 am the following day. On weekends, Grady paid her $4 an hour for 48 straight hours for Saturday and Sunday.

15. In 2009, Grady began transition to Epic, a new electronic billing and medical-recordkeeping program. Epic is an electronic medical records software system, through which physicians can order tests for patients and schedule patient

appointments, personnel can schedule follow-ups with patients, personnel can calculate and submit billing for in-patient and out-patient procedures, and the like.

16. In August 2009, Grady assigned Ms. Williams to an Epic training program and assigned her the new title of Junior Application Coordinator. In documents confirming her new job position, Grady stated that Junior Application Coordinators would be required to work 40 hours per week; that they were "exempt" employees; and that they would not be compensated for overtime. Grady began paying Ms. Williams $27.63 per hour. From August 2009 until June 2011, under the title of "Junior Application Coordinator," Grady required Ms. Williams to do the work of both her previous position of Application Analyst and her new position of Junior Application Coordinator. Many of her duties remained the same from her former position to her new position, but the demands of her time increased substantially.

17. Ms. Williams's primary job duty is to provide technology support by troubleshooting problems that end-users encounter with the Epic system. For instance, a clinician might find herself unable to order an MRI study or view a patient or a patient's status on the work list. In that case, Ms. Williams would manually enter the system and follow predetermined Grady guidelines to resolve the issue.

18. A small percentage of Ms. Williams's time is spent speaking with Grady end-users and adjusting the Epic software to meet their requirements. For instance, a doctor might desire to have the ability to add notes to a patient's records in the system to add comments regarding a follow-up visit. In that case, Ms. Williams would review written instructions in the Epic user manual and Grady guidelines to add the requested notes section.

19. If Ms. Williams is unable to find a solution to an end-user's query or issue, she contacts the Epic technical support team, a team of several highly trained employees whom Grady employs to address complicated issues.

20. Grady initially represented to Ms. Williams that her workday was to be from 9 am to 5 pm, and later changed the hours to be from 10 am to 6 pm. However, due to the demands of Ms. Williams's job, she often is required to begin work in the office as early as 5 or 6 am and work as late as 11 pm. Frequently she is given tasks that have to be completed in a single day, so she must work as long as it takes to complete the projects for that day.

21. Grady also has continued to require Ms. Williams to be on call 24 hours a day, 7 days a week as an Epic coordinator. In any given week, Ms. Williams typically receives 5 calls or more per day during her on-call time after office hours. No time of day is off limits for Ms. Williams to be required to

respond to callers. Grady end-users call Ms. Williams on both her Grady-provided on-call cell phone and her personal cell phone. When she receives calls on Sunday mornings while attending her church services, she must excuse herself to go attend to the call. If she were to miss or decline to answer a call, she would receive a warning or other discipline. In order to travel away from home during nights and weekends, Ms. Williams—without reimbursement—purchased a Verizon Wireless device for her laptop that enables her to have Internet connectivity anywhere. Now, if she is away from her home and receives a call, she can access the Grady network from her laptop.

22. From 2006 to 2009, Jay Brijlal ("Mr. Brijlal") had been Ms. Williams's general manager. When Grady assigned her to the role of Junior Application Coordinator to Epic in August 2009, Ms. Williams came under the supervision of a new manager, Kristen Zardock ("Ms. Zardock"), and Mr. Brijlal only served as "team lead." Ms. Zardock managed Ms. Williams until June 2011. At that time, Mr. Brijlal again became Ms. Williams's manager. Recognizing that Ms. Williams worked nearly 24/7 for Grady, Mr. Brijlal approved Grady paying Ms. Williams her prior rate of $4 per hour for her on-call time. Then in November 2011, Ms. Williams's manager changed again, and through her new manager,

Christmas Ellison, Grady eliminated her on-call pay. However, with three children to care for, Ms. Williams did not complain for fear of losing her job.

23. Continuously over the course of her employment, Grady required Ms. Williams to work more than 40 hours per work week and failed to pay her overtime.

### **Plaintiff Gladney Is Entitled to Overtime Compensation**

24. Plaintiff Gladney is currently employed at Grady. Like Ms. Williams, she is a Junior Application Coordinator.

25. Grady hired Ms. Gladney in September 2010, initially as an Epic "Super-User." Despite representing to Ms. Gladney that she would be paid hourly, at a rate of $15 per hour, Grady marked her as "exempt" on the job description in her letter of acceptance.

5. In February 2011, Grady moved Ms. Gladney into the role of Junior Application Coordinator. Ms. Gladney's primary job duty is to follow the predetermined Grady guidelines to walk end-users through troubleshooting steps for the Epic system, the electronic medical records software. For instance, a patient's billing account might display a $100 charge for a procedure that should be billed at only $50. In that case, Ms. Gladney would manually enter the billing system and change the billed input amount after locating the correct amount on

9

Grady's fee schedule. In the alternative, she might contact a senior team member to perform a more technical task or a task that requires a higher level of authorization, such as an alteration to the live system. If Ms. Gladney is unable to find a solution to an end-user's issue, she contacts the Epic technical support team, which Grady employs to address complicated issues.

26. Ms. Gladney also performs clerical tasks such as electronically organizing patient billing records, maintaining hospital files, and performing general office support.

27. Grady represented to Ms. Gladney that her workweek would be limited to 40 hours per week. Her official workday ran from 7 am to 3:30 pm. However, based on the workflow of a given week and her assignments, she often had to work hours in excess of a 40-hour week—sometimes working 12-hour days. Ms. Gladney's supervisor, Murry Ford, told her that she had to "work until the work [got] done."

28. Grady occasionally compensated Ms. Gladney for overtime worked in her new role as an Epic coordinator, at the rate of $38 per hour. However, on many more occasions, Grady has failed to compensate her for overtime hours worked. Grady paid Ms. Gladney overtime compensation during the months of February

and March 2011, but failed to compensate her for overtime worked during the other months of her employment.

## Defendants Violated the FLSA Willfully and in Bad Faith

29. During the 3 years preceding the date of this Complaint (the "relevant period"), Defendants required the Plaintiffs and others similarly situated to work numerous weeks in excess of 40 hours in a workweek, yet did not compensate them for the work in excess of 40 hours at a rate not less than 1½ times their regular rate of pay—and on many occasions did not compensate them whatsoever for hours worked.

30. Defendants regularly and intentionally required Ms. Williams and others similarly situated to work extended hours—including working through lunch, staying late past her scheduled shift to complete projects, and working on the weekends at her office at Grady—and required Ms. Williams to be "on call" all day, every day of the week. Grady's practices severely limited Ms. Williams's personal time away from the office, as she was constantly required to be able to connect to the Grady system via the Internet on any moment's notice. Ms. Williams was required to spend her own funds to have constant Internet connectivity. Grady never reimbursed her for this expenditure.

31. Grady also regularly and intentionally required Ms. Gladney and others similarly situated to work extended hours, up to 12-hour workdays, and without free time for lunch, after initially telling these employees that they would not have to work in excess of 40 hours per week.

32. Neither the Plaintiffs nor others similarly situated are subject to any of the exemptions of FLSA. Grady has misclassified Plaintiffs and others similarly situated as non-exempt personnel. However, the nature of the Plaintiffs' job duties renders them subject to the protections of FLSA.

33. For both of the Plaintiffs in this action and similarly situated employees of Grady, Grady failed to comply with the FLSA, 29 U.S.C. § 211(c), regarding the wages, hours, and other conditions of employment of the Plaintiffs and the similarly situated employees for the time period required by law.

## COUNT I: FAILURE TO COMPENSATE FOR OVERTIME HOURS IN VIOLATION OF FLSA

34. Plaintiffs incorporate by reference paragraphs 1-33 of their Complaint as if set forth fully here.

35. Plaintiffs bring this action to recover overtime compensation on behalf of themselves and similarly situated employees under 29 U.S.C. § 216(b).

36. Defendants did not properly compensate the Plaintiffs and employees similarly situated to the Plaintiffs employed by Grady who worked overtime hours during the relevant period.

37. Defendants failed to keep all records required by 29 U.S.C. § 211(c) regarding the wages, hours, and other conditions of employment of the Plaintiffs and the similarly situated employees for the time period required by law.

38. Defendants acted willfully in failing to pay the overtime compensation required by the FLSA to the Plaintiffs and the similarly situated employees.

39. Plaintiffs and the similarly situated employees who opt-in to this collective action are entitled to the recovery of their unpaid overtime compensation for the preceding 3 years, an equivalent amount in liquidated damages (or prejudgment interest), and their attorneys' fees and costs under 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs demand a TRIAL BY JURY and for the following relief:

(a) An award to Plaintiffs and others similarly situated of the overtime pay they are owed;

(b) An award to Plaintiffs and others similarly situated of liquidated damages against Defendants for willful violations of FLSA's overtime provisions;

(c) Plaintiffs' reasonable attorneys' fees and costs; and

(d) Such other and further relief as this court finds just and proper.

This 4th day of January, 2012.

        Respectfully submitted,

        <u>s/Elizabeth Ann Morgan</u>
        Elizabeth Ann Morgan
        Georgia Bar No. 522206
        Flora Manship
        Georgia Bar No. 317817
        THE MORGAN LAW FIRM P.C.
        260 Peachtree Street
        Suite 1601
        Atlanta, Georgia 30303
        Telephone: 404-496-5430
        morgan@morganlawpc.com
        manship@morganlawpc.com
        *Counsel for Plaintiffs*